291 So.2d 908 (1974)
Frank PAPANIA et ux., Plaintiffs-Appellees,
v.
The AETNA CASUALTY & SURETY COMPANY et al., Defendants-Appellants.
No. 4447.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1974.
Rehearing Denied April 11, 1974.
Writ Refused May 31, 1974.
*909 Stockwell, St. Dizier, Sievert & Viccellio, by Fred H. Sievert, Jr., Lake Charles, for defendants-appellants.
John Henry LeBlue, Lake Charles, for plaintiff-appellee.
Hall, Raggio & Farrar, by Frederick L. Cappel, Lake Charles, for defendant-appellee.
Before FRUGE, CULPEPPER, and WATSON, JJ.
FRUGE, Judge.
This is an action to recover damages for negligence on the part of the defendant insurance agency for failure to procure and maintain a valid policy of insurance covering the premises owned by the plaintiffs, which were damaged by fire. The jury returned a verdict in favor of the plaintiffs and the defendant insurance agency has appealed. We affirm.
The appellant, Glatt Agency, Inc., and Aetna Casualty and Surety Company were originally named as defendants in the petition of Frank Papania and his wife. Aetna was named as the fire insurer of the Papania's Restaurant, which was damaged by fire on June 15, 1970. A motion for summary judgment was filed in the district court by Aetna on the grounds that it had *910 cancelled the policy of insurance prior to the loss by fire. The motion was granted and judgment was rendered in favor of Aetna. This court affirmed 256 So.2d 854 (La.App. 3rd Cir., 1972) on the grounds there was no genuine issue of material fact and as a matter of law the policy had been effectively cancelled prior to the fire.
Plaintiffs then sought to recover under the alternative demand alleged in their original petition, that the Glatt Agency, Inc. was negligent in failing to obtain fire and extended coverage insurance on petitioner's place of business and had repeatedly assured petitioners that such coverage did exist. The petition was subsequently amended to allege that the defendant, Glatt, negligently allowed the insurance policy with Aetna to be cancelled. Plaintiffs sought to recover as damages the amount the Aetna policy would have paid had it been in force. The jury rendered a verdict for the sum of $6,463.58. As mentioned previously, Glatt appealed.
The defendant has assigned as error the jury's finding of negligence, contending there was no rational basis for the verdict, and that the plaintiffs failed to prove their case by a preponderance of evidence. Defendant also maintains the trial court erred in holding an unrestricted release granted United Gas, Inc. (as an alleged tort feasor involved in the fire) by the Papanias did not bar their recovery. Since the latter assignment of error is pled as an affirmative defense and would dispose of this matter if maintained, we will consider that issue first.
Frank Papania filed a complaint in the United States District Court for the Western District of Louisiana, against United Gas Corporation. The complaint alleged the fire which caused damage to his restaurant on June 15, 1970, resulted from the leakage of gas from defective, dangerous, and negligently maintained equipment of the defendant. Papania granted an unrestricted release to United Gas, Inc. and its insurer for the sum of $12,500.00 as a full compromise and settlement of all claims arising out of the fire. The suit was dismissed with prejudice by Papania.
Defendant maintains the unrestricted release granted United Gas, Inc. by Papania released Glatt from responsibility for damages to plaintiffs and bars their recovery. Several theories are proposed as a basis for this assertion. First, defendant alleges Glatt and United Gas, Inc. were bound in solido for damages to Papania. This obligation is said to have arisen by operation of law. The discharge by Papania of one of the solidary obligors, United Gas, Inc., without a reservation of his rights against the other, should release the other alleged solidary obligor, Glatt.
The claim that United Gas, Inc. is a solidary obligor is obviously based on the premise that United Gas negligently caused the fire which damaged the Papania's restaurant. The appellee maintains the burden of proof rests on the defendant to prove that United Gas, Inc. was negligent and caused the damage to the restaurant.
Defendant has relied on the fact that a suit was instituted by the Papanias alleging negligence on the part of United Gas, Inc. and that the suit was later compromised. Certainly, it cannot be maintained that a compromise is an admission of liability on behalf of United Gas, Inc. nor does it furnish proof of liability against United Gas, Inc. While the compromise has the force of a thing adjudged between the parties (Article 3078), it is merely an agreement between two or more parties to prevent or put an end to a lawsuit (Article 3071).
Similarly, the fact that a copy of the Federal complaint is entered into evidence does not establish fault on the part of United Gas, Inc. Mere pleadings alleging negligence are not allegations of fact, but conclusions of law. Naquin v. Baton Rouge Coca-Cola Bottling Company, 182 So.2d 691 (La.App. 1st Cir., 1966), and cases cited therein.
*911 It is settled that in order to benefit from the release of an alleged joint tort feasor, the remaining defendant or defendants bear the burden of establishing the party released was negligent and contributed to the injury of plaintiff, and thus was a joint tort feasor. Harvey v. Travelers Insurance Company, 163 So.2d 915 (La. App. 3rd Cir., 1964); Roux v. Brickett, 149 So.2d 456 (La.App. 3rd Cir., 1963); and Naquin v. Baton Rouge Coca-Cola Bottling Company, supra. There is no reason this rationale should not apply here. Defendant seeks to benefit from an unrestricted release granted to another. It is alleged by defendant that he is liable in solido with that party. In our opinion, the burden of proof rests on the defendant, Glatt, to establish that United Gas damaged the Papania's restaurant in order to benefit from the release obtained by United Gas. Defendant failed to prove that United Gas negligently damaged the Papania's restaurant, and it is not otherwise shown that a solidary obligation existed between defendant and United Gas.
The second theory urged by defendant is that its subrogation rights were impaired by the unrestricted release granted United Gas, Inc. by Papania. Defendant contends that it is subrogated to Papania's rights against United Gas under C.C. Article 2161(3) or that the insurance contract (containing a subrogation clause), which would have existed between Aetna and Papania, should be made applicable to Glatt and the Papanias.
This argument is no more than an extension of defendant's first theory, that it and United Gas were liable in solido. A necessary prerequisite to an impairment of subrogation rights is the establishment of responsibility for damages on the part of United Gas. Since defendant has failed to prove an obligation on the part of United Gas, there is no merit to this argument.
The last proposition submitted by defendant is that the Papanias will be unjustly enriched by recovery from Glatt since they have recovered from United Gas. The jury concluded that the plaintiffs were not compensated for the loss of the building and fixtures by the settlement with United Gas.
The total loss of the plaintiffs was $24,941.36. This amount was computed by the adjustor, Mr. Joseph Cagnina. He testified that Aetna's share of the loss was $6,463.58, due to the fact there were several insurers. The other insurers have paid the amounts due by them.
We have reviewed the evidence submitted and find that damage suffered by the Papanias was in excess of the amount already recovered. Plaintiffs were co-insurers for a part of their loss to the building and equipment, in addition to expenses incurred for cleaning up the premises, payment of wages to long-time employees, and loss of income. The defendant failed to prove plaintiffs will be unjustly enriched by their recovery herein.
We now turn to the allegation that plaintiffs failed to prove their case by a preponderance of the evidence and that there is no rational basis for the jury's verdict. For this purpose, a summary of the facts is necessary.
The Papanias for several years obtained insurance coverage for their various properties through the Prejean Insurance and Real Estate Agency. In May, 1969, the Prejean Insurance and Real Estate Agency was sold by Ralph Prejean to Alan Glatt, and became the Glatt Agency, Inc., the defendant herein. Prior to May, 1969, the Papania's insurance premiums were financed through local banks by Prejean or the Papanias. The Glatt Agency sought to have the Papanias finance their insurance premiums directly with Aetna, through a plan called the "Budget-Rite Finance Agreement". Essentially, this was an installment plan requiring a 20% down payment and monthly payments during the term of the policy.
*912 Budget-Rite was a computerized system which proved unsatisfactory in the instance of the Papanias and a large number of Aetna policyholders. The major problems were inaccurate billing and automatic cancellation of policies for late payment of premiums. The account of the Papanias was in a continual state of confusion. In December of 1969, Budget-Rite cancelled all of the Papania's insurance coverage with Aetna.
Mr. Glatt testified when he received the notice of cancellation, arrangements were made with the Papanias to effect new coverage. On January 26, 1970, all of the Papania's policies were rewritten by Glatt. The responsibility for premiums of all policies was assumed by the Glatt Agency, Inc. It was understood that Glatt would pay all premiums and render a bill for the total amount as soon as it could be computed. This was necessary to prevent future cancellations by Aetna and to obtain the amount owed Budget-Rite. Mr. Glatt admitted the first time a bill for the total amount was rendered was on August 6, 1970, subsequent to the fire.
On February 23, 1970, Mr. Papania received a statement from Budget-Rite for the sum of $633.62. Aetna requested additional premiums in statements dated February 24, 1970, of $88.00 and $39.60. Papania testified these were not paid immediately. A notice of cancellation of the fire insurance on the Papania's Pizza House was received on March 17, 1970. The Papanias testified that Mr. Glatt and Mr. Prejean were notified immediately. Glatt assured Papania that insurance was in effect and asked that the payments requested by Budget-Rite be made. Mrs. Papania drew a check for the sum of $761.22, the total of the three notices, to the order of Budget-Rite. The check was deposited in the account of the Glatt Agency, Inc. No payment was made to Aetna until July 24, 1970, when Aetna threatened suit and Papania inquired of Glatt about the payment.
Mr. Glatt and Mr. Prejean denied that they received notice of cancellation from the Papanias. Aetna did not notify Glatt that the policy was being cancelled. They testified they were not aware of the check sent by the Papanias. Mr. Glatt stated he did not know why it had been deposited to his account.
Aetna, in a communication dated February 18, 1970, to the Glatt Agency, Inc. inquired about the existence or non-existence of an automatic fire extinguishing system in the kitchen of plaintiff's restaurant. The notice stated that if Aetna did not hear from Glatt by March 11, 1970, Aetna would assume that there was no system and that Glatt had granted permission to issue a direct notice of cancellation to the insured.
Mr. Glatt did not inform Mr. Papania of this request for information by Aetna. Glatt contacted Mr. Prejean who handled the account. Prejean advised Glatt a system had been installed previously which was approved by Aetna.
The request for this information was made by Mr. Frank Sims of the New Orleans Office of Aetna. Glatt testified that he never communicated directly with Frank Sims. Several days after the communication, an Aetna filed man, Mr. John Scopes, called on Glatt. Scopes was given the original, written inquiry and asked to convey Mr. Glatt's assurance to the New Orleans Underwriters Office of Aetna. Scopes was not a member of the Department which requested the information. The information apparently was never received by Aetna and a direct cancellation notice was issued.
In April, 1970, the agent's monthly premiums statement received by Glatt from Aetna reflected a credit to policy 567070, the insured was listed as Papania Pizza, for $314.00. Both Glatt and Prejean admitted that a close observation of this statement would have revealed the cancellation of the Papania policy. Papania was not given credit for this $314.00 until August 4, 1970. This is the same time Glatt checked his accounts regarding the $761.22 *913 check issued by Papania for the other premiums.
It is apparent the testimony of the primary witnesses is conflicting. The Papanias emphatically state they contacted Glatt and Prejean and were assured they were covered, while Glatt and Prejean deny this. Appellant points out that the credibility of none of the witnesses was attacked and contends the surrounding circumstances do not support plaintiffs' testimony.
Appellant relies on the cases of Marcantel v. Aetna Casualty and Surety, 219 So. 2d 180 (La.App. 3rd. Cir., 1969); Diaz v. Breaux, 252 So.2d 697 (La.App. 1st Cir., 1971); Anthony v. State Farm Mutual Insurance Company, 227 So.2d 180 (La.App. 2nd Cir., 1969); Williams v. Bulk Transport, Inc., 266 So.2d 472 (La.App. 4th Cir., 1972). The general principles of these cases require a plaintiff to prove his case by a preponderance of the evidence. A preponderance of the evidence means evidence which is of greater weight or more convincing than that which is offered in opposition to it; that is, evidence which as a whole shows that the fact or causation sought to be proved is more probable than not. Marcantel, supra. These cases also hold that where significant testimony is conflicting, resort must be had to physical or circumstantial evidence in determining a preponderance of evidence. Williams, supra.; Diaz, supra.
There was ample evidence upon which the jury based its verdict in favor of plaintiffs. The testimony of the Papanias with regard to contacting Glatt and Prejean was corroborated by the payment of $761.22 by check to Budget-Rite, after receiving the notice of cancellation. This payment was contrary to the original understanding that Glatt would bill the Papanias for the total amount. The Papanias stated they paid the bills because Glatt requested it. The check was deposited to Glatt's account despite the fact it was payable to Budget-Rite. Glatt testified he did not know anything about the check.
Glatt after receiving the inquiry from Aetna regarding a threatened cancellation of plaintiffs' policy, admitted he never personally contacted Aetna's New Orleans Office. Glatt did not determine whether the information had ever reached the proper department even though the communication warned of a direct cancellation for failure to inform Aetna.
Glatt and Prejean admitted that a careful examination of the Agent's Monthly Premium Statement would have revealed the cancellation. They admitted they did not examine it for this purpose.
We find the evidence preponderates in favor of the plaintiffs. We find no error in the jury's factual conclusions. It is well settled the factual conclusions of the trier of fact will not be disturbed unless manifestly erroneous. Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3rd Cir., 1971).
For the reasons assigned, the judgment appealed from is affirmed. Appellant to pay all costs.
Affirmed.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge, (dissenting).
I disagree with the fundamental premise of the majority opinion that this is a tort action under LSA-C.C. Article 2315. The plaintiff, Papania, is seeking damages for the failure of Glatt Agency, Inc. to perform its verbal agreement to procure other insurance on plaintiff's restaurant, after the Aetna policy was canceled. In my view, this is an action for damages for breach of contract. This is not an action for the breach of any general duty owed by Glatt to plaintiff under Article 2315. Had it not been for the verbal agreement to procure other insurance, plaintiff would have no cause of action in the present case. See Prosser, Law or Torts, 3d Ed. *914 Section 93 for a general discussion of the difference between tort and contract.
Under C.C. Articles 1930, 1933 and 1934, our jurisprudence has established the rule that where the breach of contract is without fraud or bad faith, only those damages in the contemplation of the parties when making the contract may be recovered. Furthermore, only those damages caused by the breach of contract may be awarded, Lee Lumber Company v. Union Naval Stores Company, 142 La. 502, 77 So. 131 (1917); Frees and Laine v. C. W. Vollmer & Company, 78 So.2d 187 (Orl.La.App. 1955). Under this rule, the only damages which plaintiff can recover from Glatt Agency are those which the parties contemplated would result from Glatt's failure to procure other insurance, and those which were actually caused by Glatt's failure to perform.
If Glatt Agency had procured other insurance under the standard fire policy which was contemplated, as shown by a copy of Aetna's policy filed in evidence, the policy would have contained the following standard clause regarding subrogation:
"Subrogation. This company may require from the insured an assignment of all right of recovery against any party for a loss to the extent that payment therefor is made by this company."
Jurisprudence has established the rule that where an insurer is entitled to be subrogated to the rights of its insured against any tort feasor, and the insured gives an unrestricted release to the tort feasor, thereby destroying the insurer's right to subrogation, the insured loses his right of action under the policy, Polk Chevrolet Company v. Salario, 132 So.2d 115 (La. App. 1st Cir. 1961); Washington v. Dairyland Insurance Company, 240 So.2d 562 (La.App. 4th Cir. 1970); Bonnecaze v. Hamrick, 221 So.2d 638 (La.App. 4th Cir. 1969). Applying this rule to the present case, if Glatt had procured other insurance, plaintiff's unrestricted release of United Gas Corporation would have destroyed the insurer's right of subrogation against United Gas, and therefore plaintiff could not have recovered against such insurer. And since plaintiff could not have recovered against such an insurer, he cannot recover against Glatt.
For the reasons assigned, I respectfully dissent.