578 So.2d 1021 (1991)
Glenda June PARKER, et al., Plaintiffs-Appellants,
v.
SOUTHERN AMERICAN INSURANCE COMPANY, Defendant-Appellee.
No. 89-1190.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1991.
Writ Granted June 14, 1991.
*1022 Jeffrey Runson, Alexandria, for plaintiffs-appellants.
Stassi, Rausch, Rodney Lacoste, Jr., Metairie, for defendant-appellee.
Before STOKER, KNOLL and KING, JJ.
STOKER, Judge.
This appeal concerns a wrongful death action arising out of the death of John Burton Parker. The principal issue is whether a suit brought by his survivors for worker's compensation saves from prescription a tort action filed more than one year after the death.
The petition in this wrongful death action alleges that John Burton Parker, the decedent, suffered a stroke[1] on May 16, 1984, while working as a deputy sheriff for Marshall T. Cappel, Sheriff of Rapides Parish, Louisiana. Plaintiffs allege that decedent's death was caused by negligence and discriminatory acts of the Sheriff. Mr. Parker died on May 20, 1984. The tort suit was not filed until February 24, 1987. The central issue in this case is whether the facts and procedural events which took place between the two dates interrupted the running of prescription. Refinement of the issue requires a more detailed statement of the facts.

FACTS
The plaintiffs in this case are Glenda June Parker, wife of the decedent, and the Parkers' four minor children. Initially, the plaintiffs filed a worker's compensation claim. That suit was a proceeding separate from this wrongful death action presently before us. Plaintiffs timely filed a suit seeking worker's compensation benefits. The defendants were Marshall T. Cappel, the Sheriff, and the State of Louisiana. This worker's compensation suit was dismissed at the Louisiana Supreme Court level. Parker v. Cappel, 500 So.2d 771 (La.1987). That case is completed and is significant only as the filing of the suit in that case may affect prescription of the wrongful death action now before us. The record in the worker's compensation suit is not a part of the record in this tort action now before us, and we rely on the description of the worker's compensation suit in the Supreme Court's opinion at 500 So.2d 771 and the undisputed facts in the briefs of counsel.
In the wrongful death action filed on February 24, 1987, the plaintiffs named as defendant Southern American Insurance Company, the liability insurer for the sheriff and his office. Southern American filed a peremptory exception of prescription which the trial court sustained on April 20, 1988. The plaintiffs appeal from this ruling. The ruling is embodied in a document signed by the trial judge and filed in the record entitled "REASONS FOR JUDGMENT" but which concludes with the following paragraph: "Accordingly[,] the exception of prescription is maintained and plaintiff's suit is dismissed at her costs." (Although Glenda June Parker is technically the sole plaintiff, she represents her *1023 minor children as well as herself and we use the plural form.).

ISSUES
The first issue is whether the trial court's ruling of April 20, 1988 constituted a final judgment which would render the plaintiffs' devolutive appeal to this court untimely. If the appeal was timely filed, then the prescription issue must be addressed, and that issue concerns the effect of the filing of the worker's compensation suit by plaintiffs referred to above.

TIMELINESS OF THE APPEAL
The plaintiffs filed a "motion for reargument" on April 14, 1989, which the trial court denied. The trial judge signed a formal judgment effecting the denial on September 5, 1989. The plaintiffs filed a devolutive appeal on September 21, 1989, and lodged their appeal here on November 13, 1989. In this appeal plaintiffs urge that the delay for appeal ran from the September 5, 1989, judgment. The appellee urges that the "REASONS FOR JUDGMENT" signed on April 20, 1988, triggered the running of the appeal time. The question, then, is whether the judgment of April 20, 1988 denominated as "REASONS FOR JUDGMENT," constituted a final judgment.
The defendant-exceptor, Southern American Insurance Company, relies on the Louisiana Supreme Court case of Hinchman v. International Bros. of Elec. W., L.U. # 130, 292 So.2d 717 (La.1974). If the facts of this case were parallel to those of Hinchman, then we would agree that the April 20, 1988 "REASONS FOR JUDGMENT" did constitute a final judgment. We find that the facts of this case are not parallel to those of Hinchman.
The statutory authority governing the point at issue consists of LSA-C.C.P. arts. 1911 and 1918.
Article 1918 provides:
"Art. 1918. Form of final judgment
"A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment."
Article 1911 provides:
"Art. 1911. Final judgments; signing; appeals
"Except as otherwise provided by law, every final judgment shall be signed by the judge. For the purpose of an appeal as provided in Article 2083, no appeal may be taken from a final judgment until the requirement of this Article has been fulfilled."
In Hinchman the Supreme Court held that Article 1918 should not be given a restrictive or mechanical interpretation. In Hinchman, although the judgment in question contained language appropriate to reasons for judgment, the Supreme Court held that the judgment in question was a final judgment as contemplated by law because it contained the essentials of a judgment. The judgment was labeled as a judgment, included a decree and was read and signed in open court. (At the time of Hinchman, Article 1911 required that final judgments be read and signed in open court.) The Supreme Court noted that the document in question "determines the rights of parties and awards the relief to which they are entitled." The Supreme Court held that the language in the second sentence of Article 1918 was precatory and "does not render invalid a judgment which is complete and valid except for inclusion of reasons."
We see a distinction in the facts of Hinchman and the facts of the case before us. Here, the parties were not alerted in the title, as they were in Hinchman, that what followed was intended to be a judgment. The parties might have reasonably assumed that the title "REASONS FOR JUDGMENT" was meant to convey the fact that reasons were all that was intended by the document. Further, in Hinchman, the language of the judgment in that case concluded with a formal decree employing the words "IT IS ORDERED, ADJUDGED AND DECREED that...." In the case before us the document appears to be nothing more than reasons for judgment but concludes with the one sentence reading: *1024 "Accordingly[,] the exception of prescription is maintained and plaintiff's suit is dismissed at her costs." While this language is no doubt technically sufficient to constitute a valid decree, we feel that it is of such an ambivalent nature following what was so far reasons for judgment, that counsel were not placed on adequate notice that the document was intended to be a judgment.
If the position we take as just stated should not be correct, there is another reason for which the appeal here should be considered timely. The hearing on defendant-appellee's exception of prescription was heard on April 4, 1988. The document signed by the trial judge denominated "REASONS FOR JUDGMENT" was signed on April 20, 1988. Clearly the trial judge took the matter under advisement at the April 4, 1988 hearing. Therefore, LSA-C.C.P. arts. 1913, 1914, 1974 and 2087 come into play.
For the foregoing reasons, we hold that, if the time for running of an appeal ever began, it began on September 5, 1989, when the trial judge signed a judgment denying plaintiffs' motion for reargument on the ruling on the exception of prescription. Plaintiffs timely filed their appeal on September 21, 1989.

THE EXCEPTION OF PRESCRIPTION
The plaintiffs' petition in this case asserts an action in tort. On the face of the petition the tort action prescribed for failure to assert the cause of action within one year from the time the action arose. LSA-C.C. art. 2315.2(B). John Burton Parker died on May 20, 1984, and this tort action was filed on February 24, 1987. The plaintiffs urge that prescription did not take place because the filing of the worker's compensation suit against Sheriff Cappel interrupted the running of prescription. Whether interruption took place is the issue in this phase of the case. Under a strict application of Arnaud v. Molbert Bros. Poultry & Egg Co., 368 So.2d 1187 (La.App. 3d Cir.1979), interruption would not take place.

I.
Basically, plaintiffs urge three principles on their behalf. First, they urge that because the worker's compensation suit was asserted against Sheriff Cappel, and because Southern American was solidarily liable with the Sheriff as his liability insurer, the tort suit before us was interrupted by the worker's compensation suit as to Southern American.
Second, the plaintiffs assert that it was not necessary that the worker's compensation suit reflect a cause of action in tort under the holding in Batson v. Cherokee Beach & Campgrounds, 530 So.2d 1128 (La.1988). Batson held that whether a petition sets forth a cause of action is irrelevant to the issue of interruption of prescription.
Finally, the plaintiffs urge that the trial court's reliance on the case of Arnaud v. Molbert Bros. Poultry & Egg Co. "was erroneous and against public policy because the jurisprudence at the time the worker's compensation suit was filed (September 13, 1984) was that a deputy sheriff was an employee as opposed to a public official." Plaintiffs contend that on the basis of the jurisprudence their sole remedy was in worker's compensation. According to plaintiffs' reasoning they could not have filed a tort suit on September 13, 1984, and could not have done so until the Louisiana Supreme Court decided in Parker v. Cappel (the plaintiffs' worker's compensation case) that the statutory exclusion of deputy sheriffs from coverage in the worker's compensation law was constitutional.

II.
As it may serve to clarify our considerations in this case, we will first address the last contention of the plaintiffs. Plaintiffs are in error that Mr. Parker was an employee of the Rapides Parish Sheriff for worker's compensation purposes on May 20, 1984. By statutory enactment deputy sheriffs in the state clearly were excluded from worker's compensation coverage as of November 19, 1981. Acts 1981, *1025 Ex.Sess., No. 25, § 1, eff. Nov. 19, 1981.[2] Prior to the effective date of this act of the legislature, there was confusion in the jurisprudence on this issue. Until the legislative enactment, one might justifiably conclude from the jurisprudence that deputy sheriffs were employees of the sheriffs they served and were covered by worker's compensation. On this point plaintiffs in their brief cite and discuss the cases of Foster v. Hampton, 381 So.2d 789 (La. 1980); Phillips v. State, Through Dept. of Transp., 400 So.2d 1091 (La.App. 1st Cir. 1981), writ not considered, 403 So.2d 70 (La.1981), writ denied as to failure to consider original writ application, 401 So.2d 1195 (La.1981); and Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La. 1981).
Whatever may have been the effect on the jurisprudential law of this state under the Foster v. Hampton line of cases, the matter was made clear and definite through the 1981 legislation mentioned above which added paragraphs B and C to LSA-R.S. 23:1034.[3]Brodnax v. Cappel, 425 So.2d 232 (La.App. 3d Cir.1982) and Kahl v. Baudoin, 449 So.2d 1334 (La.1984). In Brodnax we held that the addition of paragraphs B and C to LSA-R.S. 23:1034 exempted deputy sheriffs from worker's compensation. We said:
"The title to Act 25 expressly states that its purpose is `to interpret and clarify by definition the "officials" excepted' from worker's compensation coverage, and subparagraph [sic] B expressly lists deputy sheriffs as exempted officials. There can be no doubt as to the legislative intent, despite the controversy in the jurisprudence [Foster, Phillips and Jenkins] discussed above. The legislature states it intends and always has intended that deputy sheriffs are officials exempted from worker's compensation."
In Kahl v. Baudoin, supra, the Supreme Court held that we erroneously gave retroactive effect to paragraphs B and C of LSA-R.S. 23:1034. See Footnote 2 at 449 So.2d 1336. In Kahl the Supreme Court held that paragraphs B and C were substantive in effect and could not be applied retroactively to exclude worker's compensation *1026 arising from the death of a deputy sheriff killed in the line of duty on June 4, 1980. Sub silentio the Supreme Court recognized the prospective effect of paragraphs B and C. As the Kahl case was decided in April of 1984, the plaintiffs are charged with the knowledge of the state of the law legislatively and jurisprudentially well before the timely filing of their worker's compensation suit on September 13, 1984.
Our appreciation of the law as it stood on September 13, 1984, can be read from the Supreme Court dissertation on the plaintiffs' worker's compensation case in Parker v. Cappel previously cited at 500 So.2d 771. While that opinion is focused on the trial court holding that paragraph B of LSA-R.S. 23:1034 was unconstitutional (which holding was reversed), the Supreme Court traced the legislative history which showed continuing legislative intent to exempt deputy sheriffs from worker's compensation coverage and to overrule jurisprudential attempts to make sheriffs' deputies employees for worker's compensation purposes. (In Parker v. Cappel the Supreme Court concluded that the legislature's later addition of paragraph D to LSA-R.S. 23:1034 legislatively overruled the holding in Kahl v. Baudoin that the state could be a co-employer with sheriffs for worker's compensation purposes.) In Parker v. Cappel the Supreme Court specifically pointed out that paragraphs B and C of LSA-R.S. 23:1034 apparently were designed to override such cases as Phillips v. State, Through Dept. of Transp., supra.
Unfortunately for plaintiffs, the arguments presented by them based on the state of the jurisprudence as reflected in Foster, Phillips and Jenkins can be of no help to them. On the date of the death of Mr. Parker, May 20, 1984, the statutory law, as recognized in the jurisprudence subsequent to the statutory addition, made it clear that the plaintiffs could not assert a worker's compensation claim arising from Mr. Parker's death. The public policy of excluding deputy sheriffs from worker's compensation coverage has been criticized as is noted in Parker v. Cappel, 500 So.2d 771, 776. We might agree, but as Parker noted "[t]he legislature has repeatedly acted to place sheriff's deputies outside any classification as state employees." Accordingly, we conclude that there is no merit to the plaintiffs' assertion that the trial court erroneously relied on the case of Arnaud v. Molbert Bros. Poultry & Egg Co., supra, and that the holding of that case is against public policy.

III.
We now approach plaintiffs' other arguments which are alternative arguments in the event that it should be held that the trial judge properly relied on Arnaud. To set the stage for discussion of these two arguments we now review the holding of Arnaud v. Molbert Bros. Poultry & Egg Co., supra, on which the trial court relied. Our holding in Arnaud may be summarized in two paragraphs which we quote from the opinion:
"The issue raised by this appeal is whether or not the filing of a petition for workmen's compensation benefits interrupts the prescriptive period for bringing a tort action arising out of the same accident, when the allegations in the petition are sufficient for bringing the former but not the latter. We hold that prescription is not interrupted in such cases."
* * * * * *
"Plaintiff's original petition did not allege any actions by the defendant which would have entitled him to bring a tort action. There was no assertion that plaintiff's injuries were the result of defendant's breach of any duty owed to him. Therefore, it did not set forth a cause of action in tort."
Notwithstanding these pronouncements in Arnaud, the plaintiffs assert that although the plaintiffs' worker's compensation petition did not name the present defendant, Southern American, as a defendant, it did name Marshall T. Cappel, the Sheriff, with whom Southern American was a solidary obligor as the Sheriff's insurer. However, this begs the question. Under Arnaud, unless the worker's compensation *1027 suit made allegations of fact sufficient to cover the tort action later filed, the worker's compensation would not even interrupt prescription against the Sheriff himself who was named in the worker's compensation petition.
The worker's compensation petition is not in the record so we cannot say whether it contained allegations beyond the fact, as reported by the Supreme Court in Parker v. Cappel, supra, that the petition alleged Parker's "stroke and death occurred in the course and scope of his employment." Evidently there were no allegations upon which tort liability could be based. The plaintiffs make no claims that any such allegations were made in the petition for worker's compensation. Instead, plaintiffs' brief merely sets forth their contention that prescription of the tort claim was interrupted by the filing of the worker's compensation suit against Southern American's solidary obligor, the insured himself.
For the claim of interruption of prescription by suit against a solidary obligor plaintiffs cite Allstate Insurance Company v. Theriot, 376 So.2d 950 (La.1979) and Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973). The gravamen of these cases is that fair notice through filing of a petition against one obligor is notice to solidary obligors. However, these cases are not apropos to the situation before us because they do not involve the question of whether notice of a compensation claim is notice that plaintiffs have or assert a tort claim. Under Arnaud the worker's compensation suit against Sheriff Cappel would not interrupt the tort claim as to him which is asserted in this suit against Southern American. Allstate and Nini do not involve crossing from causes of action for worker's compensation to tort claims or vice versa. Accordingly, we find no merit to plaintiffs' contentions concerning interruption of prescription in the case by the worker's compensation suit against the sheriff.
Plaintiffs urge alternatively that they should be allowed to amend their petition to allege that Southern American had fair notice that a claim had been asserted against their insured, Sheriff Cappel. Perhaps this argument is addressed to the fact that Southern American insured Sheriff Cappel's liability for tort claims but not his worker's compensation insurer. This argument appears to be the same one which we have just discussed. Therefore, the argument requires no further discussion other than to reiterate that if the worker's compensation insurer gave no notice to Sheriff Cappel sufficient to interrupt prescription of a tort suit against him, it could hardly be said that Southern American as the Sheriff's insurer had notice. The ultimate issue is notice; allowing amendment of plaintiffs' petition to allege notice would not strike at the basic issue.

IV.
Lastly, we come to the plaintiffs' contention based on Batson v. Cherokee Beach & Campgrounds. In their brief plaintiffs state that Batson "held that whether a petition sets forth a cause of action is irrelevant to the issue of interruption of prescription." On the basis of this holding plaintiffs urge that "[i]t is clear that the Batson case impliedly overruled the Arnaud case relied upon by the trial court as far as the issue of prescription [is concerned] where no cause of action is stated in a petition." Admittedly, the broad language of Batson relied upon by plaintiffs would seem to eliminate necessity (for purposes of prescription) to set forth in a petition any factual allegations which would characterize the nature of the cause of action being asserted or the basis of the demand made on the defendant. Nevertheless, we see a distinction between the holding by the Supreme Court in Batson and our holding in Arnaud.
The Batson prescription question involved a negligence action initially asserted without allegations sufficient to state a cause of action but which was held to be effective to interrupt prescription until a second petition was filed which did set forth a cause of action. Batson may be regarded as holding that presenting a demand for damages based on mere conclusions of law as to negligence qualifies as *1028 commencement of an action under LSA-C. C.P. art. 421. Such notice in Batson gave fair notice to the defendants that the plaintiff claimed negligence damages. Both suits in Batson were for damages based on negligence. The negligence was the same in each suit although the first suit alleged conclusions of law only.
As distinguished from the situation in Batson, the plaintiff in Arnaud made a demand for worker's compensation benefits. This did not constitute a demand for negligence damages. Therefore, the initial suit did not interrupt prescription of the negligence claim asserted in the second suit.
The distinction between a demand of a suit and a cause of action is discussed in Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350 (La.1975). Trahan pointed out that the demand of a suit is not synonymous with the cause of action set forth in the suit. The demand is the object of the suit. The cause of action is the state of facts which gives a party a right to judicially assert an action against the defendant.
We find it necessary to discuss at length the Batson and Arnaud cases in order to make these principles clear.
In Batson, William Batson sustained damages as a result of a tubing accident. His suit was dismissed on an exception of no cause of action. The court of appeal held that although the petition "failed to specify facts to support the allegations of negligence, plaintiff should have been given the opportunity to substantiate his claim with factual allegations." The court of appeal ordered that the plaintiff be allowed to amend his petition within a certain period, which the plaintiff failed to do. The trial judge dismissed the petition without prejudice. After the dismissal the plaintiff Batson did amend his petition, presumably to cure the absence of factual allegations sufficient to support his negligence action. On objections from Cherokee the trial judge set aside and vacated his order allowing the amendment after the dismissal without prejudice.
William Batson filed a second suit (Batson II) almost identical to his amended initial suit (Batson I) which the trial court dismissed on exceptions of res judicata and prescription. The court of appeal affirmed the dismissal on the prescription issue and did not reach the res judicata issue. The Supreme Court granted certiorari and reversed. The court held that the filing of the first negligence suit (Batson I) interrupted prescription for "delictual actions;" therefore prescription was interrupted as to the second negligence suit (Batson II). LSA-C.C. art. 3462.
In reviewing the court of appeal action in Batson II, the Supreme Court said:
"The first issue for our review is whether plaintiff's claim has prescribed.
"La.Civ.Code art. 3462 provides in pertinent part:
"Prescription is interrupted ... when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. [Emphasis added.] This interruption of prescription continues as long as the suit is pending and is only considered to have never occurred if the plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at trial. La.Civ.Code art. 3463.
"Accordingly, the court of appeal was incorrect when it held that `a petition which sets forth no cause of action, is not timely amended, and is dismissed for failing to state a cause of action does not interrupt prescription.' Whether a petition sets forth a cause of action is irrelevant to the issue of interruption of prescription. A civil action is `commenced by the filing of a pleading presenting the demand....' La.Code Civ.P. art. 421. Therefore, if what is filed can be classified as a `pleading presenting the demand,' prescription will be interrupted whether or not the original pleading sets forth a cause of action. Prescription is continually interrupted while the suit is pending, as long as the suit was commenced in a court of competent jurisdiction and venue and plaintiff does not abandon, voluntarily dismiss or fail to prosecute the suit at trial. La.Civ.Code *1029 arts. 3462 and 3463. If prescription has been interrupted and the suit is subsequently involuntarily dismissed without prejudice, the prescriptive period begins to run anew and plaintiff has the full prescriptive period to commence the new action. If prescription has been interrupted and the suit is subsequently involuntarily dismissed with prejudice, then the interruption of prescription will be immaterial because of res judicata." Batson, pages 1130-1131.
Batson stands for the proposition that a petition is sufficient to interrupt prescription (presents a demand in the words of the Supreme Court) if it identifies the nature of the action (negligence in Batson) and ties it to a minimally stated origin such as an accident that occurs on a certain date and place.
A reading of the court of appeal opinion in Batson I, 428 So.2d 991,[4] may clarify the Supreme Court's construction of "a pleading presenting the demand" under LSA-C. C.P. art. 421. The court of appeal in Batson I, stated the following:
"The petition in the present case alleges plaintiff `... was severely injured while using facilities and property owned and operated by [defendants] ... for the purpose of camping and tubing and boating and other recreational purposes. It further alleges `Plaintiff was hurt through the negligence of all defendants in failing to take due care, failing to warn users of the facilities of hidden dangers in and around the area delineated for such uses, failing to warn users of obstructions hidden under the water along said route, [in] violation of the statutes and laws of Louisiana and the United States.'
"La.Code Civ.P. art. 891 requires that a petition asserting a judicial demand include a statement of the object of the demand and the material facts upon which the cause of action is based. The petition at issue fails to specify any facts which support its allegations of negligence. It does not even specify how plaintiff was injured. Mere allegations of negligence are not allegations of fact which must be accepted as true, but are conclusions of law. See Papania v. Aetna Casualty & Surety Company, 291 So.2d 908 (La.App. 3d Cir.1974), writ denied, 294 So.2d 835 (La.1974); Blanchard v. Employers Liability Assurance Corp., 197 So.2d 386 (La.App. 2d Cir. 1967); Naquin v. Baton Rouge Coca-Cola Bottling Co., 182 So.2d 691 (La. App. 1st Cir.1965); writ ref., 248 La. 1100, 184 So.2d 24 (1966). Such allegations cannot form the basis of a cause of action, which under our system of fact pleading must be based on facts from which such conclusions may be drawn. La.Code Civ.P. art. 891. Johnson v. Edmonston, 383 So.2d 1277 (La.App. 1st Cir.1980); Williams v. Chrysler Motor Company, 271 So.2d 551 (La.App. 1st Cir.1972).
"We therefore conclude the trial court properly sustained the objection of no cause of action. Although the maintenance of the peremptory exception normally results in a dismissal, La.Code Civ.P. art. 934 requires the trial judge to allow time for amendment of the petition if the grounds of the objection may be removed by amendment. We conclude plaintiff must be afforded the opportunity to substantiate its contention of negligence by allowing him time to amend his petition with factual allegations. See Broussard v. Broussard, 381 So.2d 942 (La.App. 3d Cir.1980); Williams v. Chrysler Motor Company, supra."

The Supreme Court in its opinion in Batson II did not focus on Article 891 of the Code of Civil Procedure as the court of appeal did in Batson I; the Supreme Court focused only on Article 421 of the Code of Civil Procedure. In part, Article 421 provides:
"A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction."
*1030 Originally Article 891, which retained Louisiana's system of fact pleading, provided:
"The petition shall comply with Articles 853, 854, and 863, and, whenever applicable, with Articles 855 through 861. It shall set forth the name, surname, and domicile of the parties; shall contain a short, clear, and concise statement of the object of the demand and of the material facts upon which the cause of action is based; and shall conclude with a prayer for judgment for the relief sought. Relief may be prayed for in the alternative."
By amendment of Article 891, effective January 1, 1991, the language beginning with "object of the demand" has been changed to reflect changes made in the defense of res judicata. Acts 1990, No. 521, § 2 and comments thereunder. The article now provides that the petition "shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation." This substitution indicates that "object of demand" and cause of action are the same.
By considering together the court of appeal comments in Batson I and the Supreme Court's pronouncement in Batson II, it is clear that a statement of facts (fact pleading) is necessary to state a cause of action; but for prescription purposes, a mere demand unsupported by facts is sufficient. This leaves for determination what is meant by the words "a pleading presenting the demand" as employed in Article 421.
It is clear enough from Batson I and II that the plaintiff's demand was for damages arising out of the defendants' alleged negligence, and allegations of fact were not necessary to support demand for the purposes of prescription. The conclusions of law as to negligence constituted notice of the demand for negligence damages, and thus, under Article 421 were sufficient to "commence" an action in Batson`s behalf. It would appear, therefore, that a form of notice pleading is sufficient to interrupt prescription, but until the demand is fleshed out with factual allegations, a mere notice pleading will not state a cause of action and the pleading would be subject to dismissal for that reason on a peremptory exception.
Under the analysis made above, the question becomes this: Does a petition timely filed, which gives notice that the plaintiff, or plaintiffs, demand from a defendant the payment of worker's compensation benefit, also give notice that plaintiff, or plaintiffs, demand damages in tort?
In Arnaud v. Molbert Bros. Poultry & Egg Co., supra, we concentrated on the fact that worker's compensation actions and tort actions are different causes of action in tort. We said:
"Plaintiff's original petition did not allege any acts by the defendant which would have entitled him to bring a tort action. There was no assertion that plaintiff's injuries were the result of defendant's breach of any duty owed to him. Therefore, it did not set forth a cause of action in tort.
"The difference between the two petitions is not limited to the demands, as suggested by counsel for plaintiff in his brief. The original petition alleged a cause of action for workmen's compensation benefits, based essentially on defendant's employment of plaintiff at the time he was injured. The first amending and supplemental petition alleged an entirely different cause of action, based on defendant's alleged grossly negligent maintenance of its premises which produced a dangerous substance, the presence of which was known to defendant's executives. The factual allegations of the two were significantly different."
Although our approach in Arnaud may, as plaintiffs suggest, have been impliedly overruled by Batson, had we analyzed the issue in terms of "a pleading presenting a demand" sufficient to give notice of the assertion of a demand for tort damages as well as for worker's compensation benefits, we believe we would have arrived at the same conclusion which we reached in Arnaud. Stated otherwise, the Arnaud petition *1031 demanding worker's compensation benefits (with allegations sufficient to support that demand) did not constitute a pleading presenting a demand (notice) for damages in tort.
It appears to us to be appropriate in the case before us to follow a demand-notice analysis rather than focusing on the difference in causes of action. The question would be whether the Parkers' worker's compensation suit gave fair notice to the defendant, Southern American (or Sheriff Cappel for that matter). By so doing we reach a conclusion harmonious with both Batson and Arnaud. That conclusion is that the Parkers' worker's compensation suit did not give fair notice of their claim for damages for alleged torts of Sheriff Cappel.

CONCLUSION
For the foregoing reasons, the ruling of the trial court dismissing plaintiffs' action herein as having prescribed under LSA-C.C. art. 3492 is affirmed. The costs of this appeal are assessed to appellant.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.
KNOLL, Judge, concurring in part and dissenting in part.
I concur with the majority's determination that the Parkers' appeal is timely. However, I dissent from the remainder of the majority opinion for the following reasons.
It is clear that the heart of the majority opinion is its determination that in the Parkers' earlier worker's compensation suit, the plaintiffs did not make "... allegations upon which tort liability could be based." Since the worker's compensation suit is not in the record before us, in my view this conclusion is a guess.
In Arnaud v. Molbert, 368 So.2d 1187 (La.App. 3rd Cir.1979), Judge Doucet stated at p. 1188, "The original petition in ... [Lemieux v. Cousins, 154 La. 811, 98 So. 255 (1923) ] contained all the factual allegations necessary for a workmen's compensation suit. In this case [Arnaud ], the original petition did not contain the factual allegations needed to litigate a claim in tort." Lemieux presented facts in which the plaintiff timely sued in tort, and amended that petition after the prescriptive period to urge a claim in worker's compensation. In denying the exception of prescription, the Supreme Court in Lemieux focused on the allegations of the timely filed tort suit to resolve the prescription issue in favor of the plaintiff. Arnaud utilized this analysis in a reverse situation, i.e., where the plaintiff originally filed a timely action in worker's compensation, and later attempted to sue in tort after the prescriptive period had run.
It is clear that the parties involved in the present litigation thought that the original worker's compensation suit was part of this record; however, it is not. Accordingly, in the interest of justice I cannot agree with the majority when it affirms the dismissal of this lawsuit without examining plaintiffs' original petition in the worker's compensation suit.
The Parkers' original suit in worker's compensation was reviewed directly by the Supreme Court and is a published decision in the Southern Reporter. Adjudication of the present litigation requires examination of the Parkers' original worker's compensation petition, as well as any amendments and supplementations. Therefore, in the interest of justice, I find that we should order the record supplemented so that we can review the Parkers' petition in their worker's compensation claim before affirming the dismissal of the Parkers' tort suit on an exception of prescription. Lemieux, supra; Arnaud, supra.
For these reasons, I concur in part and dissent in part.
NOTES
[1] In plaintiffs' brief, they assert that John Burton Parker died on May 20, 1984 as a result of a myocardial infarct.
[2] This statute amended and reenacted Section 1034 of Title 23 of the Louisiana Revised Statutes of 1950 which is contained in the Louisiana Worker's Compensation Law, LSA-R.S. 23:1021 et seq.
[3] Paragraph B of LSA-R.S. 23:1034, read with paragraph A, excludes deputy sheriffs as "public officials" from coverage for worker's compensation. Paragraph C provides that, notwithstanding the exclusion, political subdivisions may provide worker's compensation coverage for its "officials." The three paragraphs of LSA-R.S. 23:1034 provide:

§ 1034. Public employees; exclusiveness of remedies
A. The provisions of this Chapter shall apply to every person in the service of the state or a political subdivision thereof, or of any incorporated public board or commission authorized to hold property and to sue and be sued, under any appointment or contract of hire, express or implied, oral or written, except an official of the state or a political subdivision thereof or of any such incorporated public board or commission; and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory; provided that one employed by a contractor who has contracted with the state or other political subdivision, or incorporated public board or commission through its proper representative, shall not be considered an employee of the state, or other political subdivision, or incorporated public board or commission; further, provided that members of the police department, or municipal employees performing police services for any municipality who are not elected officials shall be covered by this Chapter and shall be eligible for compensation; and provided further that criminal deputy sheriffs for the parish of Orleans shall be covered by this Chapter and shall be eligible for compensation as provided herein.
B. Except as expressly and specifically provided to the contrary in Subsection A hereof, the officials excepted from coverage under the provisions of this Chapter, in Subsection A of this Section, include all public officers as defined by R.S. 42:1. In this regard, sheriffs' deputies are, under R.S. 42:1, 33:1433, and 33:9001 et seq., appointed public officers and officials of their respective political subdivisions, the parish law enforcement districts.
C. Notwithstanding the provisions of Subsection A hereof, any political subdivision may, in its own discretion and by using its own funds available for same, provide worker's compensation coverage for its officials, in addition to having to provide such coverage for its employees.
[4] The full citation of the court opinion is Batson v. Cherokee Beach & Campgrounds, Inc., 428 So.2d 991 (La.App. 1st Cir.), writ denied, 434 So.2d 1092 (La.1983).